and we'll move to our third case this morning. Chase Braun v. Village of Palatine. All right, I see both counseled. Mr. Spataro, you may proceed. Good morning, your honors. May it please the court. Attorney Kujawa, as the judge mentioned, I'm George Spataro from the Mendoza Law Offices, representing Chase Braun, the plaintiff appellant in this matter. Your honors, the district court found that probable cause to arrest Chase Braun existed as if it were a threshold issue or question for the court to decide like in a criminal case. In Mr. Braun's case, a jury could clearly conclude that the defendants did not have probable cause to arrest Mr. Braun for DUI alcohol. And I add emphasis to that phrase, DUI alcohol, because the court and the defendants wanted to only coin DUI without paying attention to the fact that Mr. Braun was actually charged with DUI alcohol. And that makes a difference here. There's too many facts and there's too many fact issues in dispute for the court to decide this issue. The court shouldn't have assigned weight to evidence. The court should not have only considered evidence that could prove probable cause to arrest for DUI without talking about the alcohol aspect of it and should view all the evidence in a light most favorable to Chase Braun. I believe that, and Mr. Braun believes that the court wrongly determined that no jury could disagree on the court's assessment of the facts. I don't believe that that's the court's purview in this situation. In civil actions, probable cause is not a threshold issue, but the central issue that must be left for determination at trial and not decided summarily by the court. In criminal matters- Well, Mr. Spatero, is there really a disagreement about the historical facts here, about what actually happened in the stop? Not the stop, the crash. And the field sobriety test and so forth. Is this an interpretation dispute about what the legal consequences of the historical facts are as to the probable cause question? Or is there really a dispute about what happened as a historical matter? Judge, there's a dispute about actually what facts were available to both the police and to the trial court that should have prevented the entry of summary judgment. We take, for instance, the court latched onto Mr. Braun's phrase that I'm fine. However, the court ignored the fact that when the police first opened Mr. Braun's car door, and to historically tell you, Mr. Braun had a one car collision into a pole after he left his girlfriend's house where he began to get sick that evening. So when they opened his car door, Mr. Braun, under oath, testified at his deposition that he said, I don't feel well, I need help. They ignored that. The court ignored that. They also ignored the fact that they latched onto the- When you say ignored, Mr. Espitaro, you don't mean that literally. You mean they just viewed the fact in a way different than you believe it should have been viewed. In other words, you're not arguing here, as Judge Sykes, I think he's getting. In other words, I think we can all agree on what happened. There's not a question here about, Judge Gettleman never even realized that Mr. Braun said what you just reported. It's not that kind of case. So all we're doing is we're arguing about what conclusions can be drawn from facts that we can all agree on. And what you're saying is that there's just not probable cause to arrest in this situation. Correct. There wasn't any facts available to arrest unless you ignore a whole bank of facts and only zero in on the fact that Mr. Braun said, I'm fine. And another fact that was latched onto- So that's as to medical care, right? Well, that's as to how he was feeling and what he said to them that he needed when they opened his car door. Right, and you brought a claim. You brought a claim that there was a failure to provide medical care. So that's why that fact's relevant there. But if you go back to the DUI, I watched the video. And the police, of course, don't have the benefit of knowing all of your client's background and history and what was going on at the girlfriend's house. They don't know that. They know what they encountered at 12 or one o'clock in the morning. And if you play that video, it sure looks like somebody that is minimizing how much they had to drink and is struggling because they drank too much. I mean, he has trouble with the ABCs. He's wobbly. I mean, I think that's what it looks like and that's what the cops saw. But if you couple that, Your Honor, with the fact that there was no smells of alcohol, there was no physical evidence in or around the car of any alcohol use, and that a reasonable police officer at the scene looking at Mr. Braun, A, could not have figured that all of this about Mr. Braun could be from one beer six hours earlier. Well, Mr. Smetaro, sometimes people lie when they get pulled over and they're drunk. It seems to me like you're setting a very, very high bar for the police to make an arrest for a suspected DUI. I mean, I suspect that a single vehicle crash at 1 a.m., I would suspect a police officer's antenna would go up. I guess I'd like to think that, that their antenna would go up. And then based upon the video and the questions that were asked, what would you have had the police do here? I would have had them let Mr. Braun be examined by the paramedics in the ambulance that was sitting a couple of, maybe 50 feet away, that was already at the scene, and that the police officers chose to send away without letting them evaluate Mr. Braun. Number two, like the experts said, if they would have had a preliminary blow stick as part of their repertoire in a situation like this, they would have known that Mr. Braun didn't have alcohol in his system. They would have known that Mr. Braun didn't have alcohol in his system by the result that would have come from the blow test. The experts say, if that would have occurred at the scene, he would have gone right to the ambulance and then right to the hospital. Our complaint is broader than that. It's not just what occurred on the street. It's what occurred throughout that evening. Our complaint is not only with regard to probable cause, it's not only based upon what they saw at the scene, but what they continued to see throughout their interactions with Mr. Braun. This is a rolling kind of circumstance, and I suspect that they should have thought to themselves based upon what was available to them at the scene. They should have said, well, here's a guy who says he had one beer, and here's a guy who appears to be wobbly, and he's giving us kooky answers, and here's a guy who appears not to know what's going on with him. And it should have been obvious to them at that time that he could have suffered from a head injury in the collision. They should have had him assessed, and as opposed to trying to get a DUI charge against someone, and instead of only considering criminality, which is what Officer Lykeri has admitted to. He's admitted that he thought something was weird about Mr. Braun. He admitted that it didn't make sense to him, and he also admitted that he didn't consider anything but criminality. So all of those things come together as a rolling occurrence. What did they see at the scene? What did they see in the car on the way to the police department? He blows a triple zero at the police department, and they still charge him with DUI alcohol. Not DUI drugs, or not just flat DUI. The charging documents are the subsections only for DUI alcohol. Mr. Patero, can I ask you a practical question? Yes, sir. Not that what we're talking about's not practical, but one of the things that I noticed in your brief, and I appreciate you including it very much, you said Mr. Braun has struggled to find a job because this DUI arrest remains on his record. And the question I have is at the end of the day, these charges were all dropped, right, when the final test came back and all the dust settled down. So is there not a way that your client can't get the arrest expunged from his record? Judge, I think that that's a great inquiry. And here's the answer to that. He did have the DUI expunged from his criminal record. His prior attorney who represented him in criminal court after going to criminal court two, maybe three times, then went through the expungement proceedings. However, we're in the age of the internet. And in the age of the internet, you can expunge all you want. Once there's a black mark on you that says, Chase Braun arrested for DUI, every prospective employer sees it. Okay, I appreciate that very much. But as a matter of fact today, if you go check with the village, the arrest has been expunged from his official record anyway even though we could Google it, as you're saying? I'm saying employers could do that, but I don't believe they go that far. When they see that black mark, they go on to their other candidates. But it's been expunged as an official matter, is your point? Yes, it is. But you can Google it. Okay, thanks. All you gotta do is type his name in. I believe that. I'm not doubting that. If it's not the first thing, it's the second thing that pops up. All right. And that's what we were talking about. Judge, in civil actions, probable cause is not a threshold issue, but it's the central issue. And it must be left for determination at trial and not decided summarily. In a criminal proceeding, probable cause is a judge issue with relaxed evidentiary rules. But in a civil case, probable cause is truly a jury issue unless all of the facts are looked at, unless all of the facts are looked at in a light most favorable to Mr. Braun, and unless all of the facts are taken into consideration to determine whether there is a dispute or not and, you know, plaintiff in this circumstance suggests that from the start here, there's been a dispute. Mr. Braun says he didn't fail the field sobriety test. The police officer said he did. The experts say, well, he was a little wobbly, but I wouldn't go as far as saying he failed them. The district court didn't consider all of the available facts. We believe there were ample facts that the court didn't consider, that dispute probable cause to arrest at the scene and to continue the charge of DUI alcohol throughout that night, and until Mr. Braun ends up having a seizure in the police department. The district court didn't treat all of the available facts in a fashion most favorable to Mr. Braun. There's a fact dispute over whether Chase failed the field sobriety test. I just said that. There's, that's material to the false arrest claim. The district court, like the defendants, focused only on the word DUI and not DUI alcohol as charged. As a result, the court acted as a trier of fact, of the trier of facts apparently in dispute and usurped the jury's function to determine weight and credibility where the facts were in dispute. If the district court's view of the facts had not been limited only to facts favorable to the defendants, it would have seemed that defendants' actions were not objectively reasonable. They left, the district court's consideration of the facts left no room for doubt. If you only look at one side and only- Mr. Sotero, you're well into your rebuttal time. You've only got 35 seconds left. Oh, I'm sorry. I, to end, we believe we displayed enough evidence to raise genuine issues of material fact, especially after he blew triple zero and he had a second seizure at the hospital. The jury could easily determine that it was objectively unreasonable for the defendants at the scene because of the things that occurred there and that the ambulance was sitting right there. And the last thing I wanna say is, is that Mr. Braun was a detainee. The police have a heightened responsibility with regard to medical care for detainees than they do just the regular person that they encounter on the street. He, his movement, his freedom was restricted. He couldn't walk away from them and go get his own medical care. Mr. Sotero, I'm gonna have to interrupt now. You've used all of your time. Okay, I'm sorry. I, thank you. I appreciate it. And we suggest that the, the rulings of the district court be reversed and the case be remanded for further proceedings. Thank you. Mr. Kujawa. Your honors, Michael Kujawa on behalf of the village of Palatine and officer Michael Akari. The district court was correct in granting some new judgments to Palatine and officer Akari. There was no evidence ignored by the district court in its analysis in this case. What the court did was look at the undisputed material facts which are shown on the dash cam video which I believe everybody has seen. And those facts, those undisputed material facts is viewed on that dash cam video established that officer Akari had probable cause at the scene to arrest Mr. Braun for DUI. Those, those undisputed material facts shown on the dash cam video also established that Mr. Braun denied multiple times during his the investigation into his crash and into the DUI that he needed medical care or that he had a medical condition. In fact, there was no evidence in this case at all that anyone at Palatine had actual knowledge of Mr. Braun's medical underlying medical condition of epilepsy. At a minimum in this case, officer Akari is entitled to qualified immunity on both the probable cause and the medical care issues simply because officer Akari's subjective belief  that he had probable cause to arrest and that Mr. Braun did not need or want medical care was objectively reasonable when you watch what happened at the scene on that dash cam video. Not only is there no case out there establishing that what officer Akari did that night would violate Mr. Braun's constitutional rights. There's actually a case almost directly on point from the seventh circuit, the Quan V. Kautz case in which Mr. Quan was involved in a motor vehicle accident. He denied medical attention at the scene. There was no evidence of physical injury. He had an underlying medical condition that no one knew about. And in that case, the seventh circuit determined that there was probable cause to arrest for DUI. And again, there was no issue regarding that they violated his constitutional rights by not providing any medical care. Finally, the last issue is that the district court did not abuse its discretion when it denied plaintiff's request to reinstate his Monell claim 15 months after it was dismissed and after expert discovery was closed. I think a couple of things that Mr. Spataro brought up in his argument needed to be addressed. And one is this distinction between what happened leading up to the arrest and then what happened after the arrest. And from the probable cause analysis, and determination, the probable cause determination is made at the time of arrest. And so any evidence that anyone learned after the time that Mr. Braun was arrested by Officer Licari is irrelevant to the probable cause determination. But what we need to point out, Mr. Spataro wants to emphasize the fact that this was DUI alcohol and that he blew triple zero at the station, which is true. However, that's why he was, Mr. Braun, was taken to the hospital. And he was, the arrest time here was just before 1.22 a.m. Because we know from the police records that the transport from the scene to the station was from 1.22 a.m. to 1.26 a.m. He was at the hospital at 2.28 a.m., according to the medical records from the hospital for the DUI blood and urine kit. And it's important to point out this blood and urine kit that it's both things that are tested in a DUI kit because the blood is not tested for drugs. The blood test is for alcohol. It says right on the laboratory report, blood is for ethanol and for other things such as inhalants, but it's not tested for drugs. The urine is what is tested for drugs. And they did find something in Mr. Braun's system that night. It was diphenhydramine, which is a central nervous system depressant, which according to some of the testimony in the case, can cause some of the symptoms that Mr. Braun was observed to be displaying at the time of the arrest in the investigation. But the idea that Mr. Spataro was talking about here, that a portable breath test given to someone at the scene, and which shows no evidence of alcohol, would they give Mr. Braun the keys back and let him drive away if his car was drivable after the one car accident, or that they let him walk home or do anything else other than to continue to investigate is a falsity. Mr. Kujawa, what does the record show with respect to sending the ambulance home or canceling the ambulance? Did that occur as a factual matter according to the summary judgment record after Mr. Braun said he was fine? Is that fact clear? Yes, it is. If you look at the time of the, but from the, the fire department was canceled and sent away at 1.05 a.m. The initial, this is about 10 minutes after the officer was first at the scene. The first call came in about 12.52, and Officer Lopari is at the scene with Mr. Braun between 12.52 and 12.55. And we know that the audio on the dash cam video comes on, it's either 30 seconds or a minute after the beginning. So the first, at least nine minutes of the, or maybe eight minutes of the encounter on the dash cam video, in which Mr. Lopari says multiple times that he is not injured, there is no visible sign of injury seen by any of the officers, and that he does not need medical care and does not have an underlying medical condition. That information has all been stated by Mr. Braun and is on the dash cam video. Because of that, that is when the police officer sent, released the fire department to go back to doing whatever it is they need to do as opposed to being tied up at this scene where they're not needed. I think it's, when we talk about this failure to provide medical care thing, Mr. Spataro points out that in this, before the audio kicks in on the dash cam video, that he says that Mr. Braun says something along the lines of I'm not feeling well or I need help. If that's what he said, and I know that's what he testified to what he said, and it's certainly not corroborated anywhere, he never said it again. He certainly never said it during the entire course of the dash cam video. And he was at the hospital talking to nurse Corradini during the time that the blood and urine kit was done at 2.28 a.m. It's about an hour after his arrest. And she asked him on two occasions, does he need medical care or is he injured in any way? And on both times, he denied it. You look at the Quan V. Pouch case in terms of failure to provide medical care. In that case, they had Mr. Quan locked up for three days before they decided that it wasn't some sort of drug or alcohol intoxication that was causing the symptoms and finally took him to the hospital. This entire incident was three hours and 38 minutes from the time of the reported crash until the time that Mr. Braun had a seizure at the police station as observed by the police officers and they called EMS. So the idea that these officers should have recognized an underlying medical condition that they had no actual knowledge of and tried to parse that out from the obvious indications of intoxication or being under the influence of drugs that were present at the scene as observed by anyone who watches the dash cam video. I think you're setting an impossible standard on police officers if you're gonna say that they are required to recognize this medical condition and handle this case any differently than the way they did or that based on the facts and circumstances as shown in the dash cam video that they didn't have probable cause to arrest Mr. Braun for DUI in this case. Mr. Spataro's recitation of the facts prior to the accident, I think his own recitation of the facts would demonstrate that probable cause existed to arrest Mr. Braun for DUI. The fact that everything he said on the video about the one car crash at 1 a.m., that should raise a red flag in the mind of an officer as to what happened out there. That should create, and with everything else, creates probable cause sufficient to arrest. And as I said before, even if there is a question based on the totality of the circumstances as to whether or not Officer Licari had probable cause to arrest Chase Braun, and I submit that there is not, just as Judge Gettleman found, and just as is displayed in the undisputed facts shown in the dash cam video. Clearly, Officer Licari had arguable probable cause when we look at it from a qualified immunity analysis. There was nothing that would lead Officer Licari to think that his conduct would be unlawful in the situation that he confronted and the way he handled Chase Braun that night. And again, the Quan V. Kautz case, I think is directly on point, both for the probable cause analysis and for the failure to provide medical care analysis. If there are no other questions from the panel, I would submit to this court that the district court ruling should be affirmed because to do otherwise would set a terrible precedent for police officers and municipalities in the Seventh Circuit. Thank you. All right, thank you very much. Mr. Spataro, you had used all your time, so we will thank both counsel in this case and take the case under advisement.